Austin *v.* State.

---

AUSTIN *v.* STATE.

*(Knoxville.    December   21,   1898.)*

1. CIGARETTES.  *Statute forbidding introduction of, for sale not un-constitutional.*

A State statute that makes it a misdemeanor to bring cigarettes into the State for sale or other disposition is not a regulation of interstate commerce that is obnoxious to the commercial clause of the Federal Constitution, for the reason that cigarettes, by reason of their harmful character, are not legitimate articles of commerce.  *(Post, pp. 565, 578, 579.)*

Constitution construed: Art. I., Sec. 8, Cl. 3 (U. S.).

Act construed: Acts 1897, Ch. 30.

Cases cited: 5 How., 504; 125 U. S., 465; 95 U. S., 465; 135 U. S., 100; 155 U. S., 461.

2. SAME.  *Judicial notice taken of their noxious character.*

The Courts take judicial notice of the harmful character of cigarettes.  *(Post, pp. 566, 567.)*

Cases cited: 171 U. S., ——; 18 La. Ann., 497 (S. C., 89 Am. Dec., 658); 11 R. I., 592; 55 Ala., 158.

3. SAME.  *Revenue tax upon, does not give commercial character.*

The imposition of an internal revenue tax upon cigarettes is not a recognition of them as legitimate articles of commerce.  *(Post, pp. 573, 574.)*

4. SAME.  *Original package.*

Pasteboard boxes of cigarettes, each containing ten cigarettes and separately stamped and labeled, as prescribed by the United States revenue statute, are not original packages of commerce, when they are transported in an open basket which belongs to an express company, and which is filled and emptied by its agent, but the basket is the original package.  *(Post, pp, 574–580.)*

Cases cited: 81 Fed. Rep., 997; 39 L. R. A., 484; 10 L. R. A., 430–432.

Austin v. State.

5. CONSTITUTIONAL LAW. *Burden on party assailing constitutionality of statute.*

All intendments are in favor of the constitutionality of every statute passed with requisite formalities; hence the burden is upon the person who assails a State's restrictive or prohibitory statute, so passed, as an unwarranted interference with interstate commerce, to show that the particular article involved is a legitimate subject of commerce. If this matter is left in doubt, the statute will be upheld. *(Post, pp. 572, 573.)*

6. STATUTES. *Unconstitutional in part.*

A statute, unconstitutional in part, may be constitutional and valid as to the residue—*e. g.*, a State statute, void as an unlawful regulation of interstate commerce may be valid in its application to internal commerce. *(Post, p. 579.)*

Cases cited: State *v.* Scott, 98 Tenn., 254; 128 U. S., 1; 123 U. S., 623; 155 U. S., 461.

---

FROM MONROE.

---

Appeal in error from Circuit Court of Monroe County. JAMES G. PARKS, J.

WELKER & PARKER for Austin.

Attorney-general PICKLE for State.

CALDWELL, J. W. B. Austin prosecutes this appeal in error from the judgment of the Circuit Court of Monroe County, whereby he was sentenced to pay a fine of fifty dollars and costs of suit, for unlawfully selling cigarettes. He admits the sale, but denies that it was unlawful.

Austin, who was a citizen and merchant of Monroe County, Tennessee, purchased from the American Tobacco Co., a New Jersey corporation, at its factory in Durham, North Carolina, a lot of cigarettes, in packages of ten cigarettes each, which it shipped thence, by express, to him at his place of business in this State; and there he sold one of these packages, without breaking, to W. G. Brown, an adult citizen of the same county.

The statute under which the conviction was had unconditionally prohibits all sales of cigarettes, whether manufactured in this State or elsewhere. It provides "that it shall be a misdemeanor for any person, firm, or corporation to sell, offer to sell, or to bring into the State for the purpose of selling, giving away, or otherwise disposing of, any cigarettes, cigarette paper, or substitute for the same; and a violation of any of the provisions of this Act shall be a misdemeanor, punishable by a fine of not less than fifty dollars." Acts 1897, Ch. 30, Sec. 1.

Austin concedes that his sale to Brown was clearly within the prohibition of this Act, yet he says it was lawful, nevertheless. The substance of his contention is, that his sale was of an imported commercial article, in the original package, and that the statutory prohibition, as applied to such a sale, is obnoxious to the commerce clause of the Federal Constitution, and, therefore, null and void.

In considering this contention, we raise two vital inquiries: Whether or not cigarettes are legitimate

articles of commerce, and whether or not the sale shown in this case was of an original package in the true commercial sense.

1. Are cigarettes legitimate articles of commerce? We think they are not, because wholly noxious and deleterious to health. Their use is always harmful; never beneficial. They possess no virtue, but are inherently bad, and bad only. They find no true commendation for merit or usefulness in any sphere. On the contrary, they are widely condemned as pernicious altogether. Beyond question, their every tendency is toward the impairment of physical health and mental vigor. There is no proof in the record as to the character of cigarettes, yet their character is so well and so generally known to be that stated above, that the Courts are authorized to take judicial cognizance of the fact. No particular proof is required in regard to those facts which, by human observation and experience, have become well and generally known to be true (*Schollenberger* v. *Pennsylvania*, 171 U. S., ——; 1 Greenl. Evi., Sec. 6; 1 Whart. Evi., Sec. 282; 1 Jones Evi., Secs. 129, 134; *Lanfear* v. *Mestier*, 18 La. Ann., 497 (S. C., 89 Am. Dec., 658, and note 693); *State* v. *Goyette*, 11 R. I., 592; *Watson* v. *State*, 55 Ala., 158); nor is it essential that they shall have been formally recorded in written history or science to entitle Courts to take judicial notice of them. *Boullemet* v. *State*, 28 Ala., 83; 12 Am. & Eng. Enc. L., 199.

It is a part of the history of the organization of

Austin v. State.

the volunteer army in the United States during the present year that large numbers of men, otherwise capable, had rendered themselves unfit for service by the use of cigarettes, and that, among the applicants who were addicted to the use of cigarettes, more were rejected by examining physicians on account of disabilities thus caused than for any other, and, perhaps, every other reason. It is also a part of the unwritten history of the legislation in question that it was based upon and brought to passage by the firm conviction in the minds of legislators and of the public that cigarettes are wholly noxious and deleterious. The enactment was made upon this idea, and alone for the protection of the people of the State from an unmitigated evil. Such being the nature of cigarettes, they cannot be legitimate articles of commerce, and, consequently, are not within the provision of the Federal Constitution (Art. I., Sec. 8, Cl. 3) in relation to the regulation by Congress of commerce with foreign nations, and among the several States, and with the Indian tribes. Only those things which are in fact commodities in some true sense, and, as such, are proper things for importation and use, can be legitimate articles of commerce and within the scope of the constitutional provision invoked by the defendant in this case. Regulation of traffic in things not suited for commerce was not by that provision delegated to Congress. Every State has the right, under its reserved police power, to prohibit the im-

portation and sale of all articles inherently unworthy
of commerce and unfit for the use of its people.
Indeed, an active duty rests upon the legislative
branch of the State government to enact appropriate
laws for the protection of the public against the
hurtful influence of such articles, and, in the dis-
charge of that important duty, the members of the
Legislature must be allowed to act in accordance
with the dictates of their own best judgment. This
does not mean, however, that the State Legislature
may override congressional legislation on the subject,
or that the State has the paramount right to deter-
mine what is and what is not a legitimate article
of interstate or international commerce. The reverse
is true. Congress has the superior right in the de-
termination of that question, and its decision, when
made, is controlling. But, if the question arises in
the State in advance of congressional action, as in
the present instance, the State Legislature may and
should act according to its own deliberate view of the
matter, and its action, when taken, is and should
be conclusive until Congress shall have given some ad-
verse expression on the same subject. We are mind-
ful of the rule that the silence of Congress in relation
to articles confessedly suited for commerce is to be
taken as legally equivalent to its declaration that the
transportation of those articles into the States shall
be free and unrestricted (*Mobile* v. *Kimball*, 102 U.
S., 691; *Robbins* v. *Shelly*, 120 U. S., 492; *Leisk*
v. *Hordin*, 135 U. S., 100; *State* v. *Scott*, 98

Austin *v.* State.

Tenn., 260); but congressional nonaction upon the antecedent question as to whether or not other articles are suited for commerce, is not tantamount to an affirmation by that body that they are so. Articles of the former class are already within the domain of congressional regulation, while those of the latter class are as yet beyond that domain and within control of the States, and, from the nature of the case, must remain so, unless and until affirmatively determined by higher authority to be worthy of commerce, and thereby transferred to the other class. The right of a State to protect its people, in their comfort, health, and safety, against the importation and sale of noncommercial articles has long been recognized, and never questioned, by the Supreme Court of the United States. *License Cases,* 5 How., 504; *Bowman* v. *Chicago,* 125 U. S., 465; *Hannibal & St. J. R. R. Co.* v. *Husen,* 95 U S., 465; *Leisy* v. *Hardin,* 135 U. S., 100; *Plumley* v. *Massachusetts,* 155 U. S., 461; *Collins* v. *New Hampshire,* 171 U. S., ——; *Schollenberger* v. *Pennsylvania,* 171 U. S., ——.

In the license cases Mr. Justice Catron observed that what belongs to commerce is within the jurisdiction of the United States, and that what does not belong to commerce is within the jurisdiction of the State, and by the State may be excluded from introduction. 5 How., 600.

The statute of Pennsylvania impeached in Schollenberger's case (171 U. S., ——), was adjudged vio-

lation of the commerce clause of the Federal Constitution, because it prohibited the importation and sale of pure oleomargarine. In the course of his opinion in that case, Mr. Justice Peckham attached controlling importance to the fact that pure oleomargarine, as contradistinguished from that which was adulterated, was a wholesome article of food, and had been recognized by Congress as a commodity suitable for commerce; and, in recognition of the State's right to exclude the adulterated article, said: "The bad article may be prohibited, but not the pure and healthy one."

In Plumley's case (155 U. S., 467), it was said, in effect, by the Court, speaking through Mr. Justice Harlan, that deceptive discoloration or adulteration of imported oleomargarine removed it from the domain of congressional regulation, and subjected it to unconditional exclusion by State law.

The New Hampshire enactment involved in the Collins case (171 U. S., ——), provided for the exclusion of all oleomargarine not of a pink color. It was held to be invalid, for the reason that it virtually excluded pure oleomargarine, which was never naturally pink in color, and which was a proper and well-recognized commercial commodity.

The case of *Leisy* v. *Hardin*, 135 U. S., 100, is the one most urged upon our attention by counsel for Austin. That case, however, like all the others, recognized the right of the State, under its police power, to prevent the introduction of noncommercial

articles among its people. Mr. Chief Justice Fuller distinctly places the Court's decision upon the ground that the commodities whose importation and sale were so greatly restricted by the Iowa statute there examined, had been "recognized by the usages of the commercial world, the laws of Congress, and the decisions of courts" as proper articles of commerce, and were, therefore, subject, in the first instance, to congressional regulation only. In the conclusion of the opinion he said: "Whatever our individual views may be as to the deleterious or dangerous qualities of particular articles, we cannot hold that any articles which Congress recognizes as subjects of interstate commerce are not such, or that whatever are thus recognized can be controlled by State laws amounting to regulation, while they retain that character; although, at the same time, if directly dangerous in themselves, the State may take appropriate measures to guard against injury before it obtains complete jurisdiction over them."

That case, then, as the others that declare State restrictions and prohibitions unauthorized and invalid, is distinguishable from the present one in the fundamental and ever-controlling 'fact that the articles there in question were commercial commodities in some true sense, and as such appropriately recognized, while those here in question are not so. Moreover, besides the conclusive recognition received by those articles, they stand upon a higher plane in respect of inherent merit than cigarettes, for they are con-

fessedly beneficial in some instances and for some purposes, while cigarettes have no redeeming qualities. The Iowa statute, upon its face, distinctly acknowledged that the restricted articles possessed some virtue, by allowing importations and sales of them for certain purposes and under certain restrictions. In no instance has a State's right of authority and control been denied when the commodity restricted or prohibited was not first found to be a proper subject of commerce, and therefore within the jurisdiction of Congress and beyond the jurisdiction of the State. The existence of that fundamental fact has always been the decisive criterion, and the burden of showing it is upon the complaining party.

All intendments are in favor of the constitutionality of every statute passed with requisite form and ceremony (Cooley's Const. Lim. (5th Ed.), 218; Black's Const. Law, Sec. 28; Suth. Stat. Con., Sec. 332; *Railroad* v. *Harris*, 99 Tenn., 703); hence, the burden is upon the person who assails a State's restrictive or prohibitory statute, so passed, as an unwarranted interference with interstate or international commerce, to show that the particular article involved is a legitimate subject of commerce. If that fact be not made to appear in some appropriate way, his assailment must be unsuccessful.

Mr. Chief Justice Marshall, in *Brown* v. *Maryland*, 12 Wheaton, 436, wherein a State statute was challenged for repugnance to the commerce clause of the Federal Constitution, remarked: " It

Austin *v.* State.

has been truly said that the presumption is in favor
of every legislative act, and that the whole burthen
of proof lies on him who denies its constitution-
ality.''

The same rule was announced and emphasized by
Mr. Chief Justice Waite in this language: ''Every
possible presumption is in favor of the validity of
a statute, and this continues until the contrary is
shown beyond a reasonable doubt.    One branch of
the government cannot encroach on the domain of
another without danger.    The safety of our institu-
tions depends in no small degree on a strict ob-
servance of this salutary rule.''    *Sinking Fund
Cases*, 99 U. S., 718.

If there were only a doubt, then, that cigarettes
are legitimate articles of commerce, that doubt would
be resolved against the defendant and this Act would
be sustained.    But, as already stated, they are
clearly not so, as the Court may judicially know
(*Schollenberger* v. *Pennsylvania*, 171 U. S. ——),
and the passage of the Act is a legislative deter-
mination to that effect, which must be treated as
conclusive of the question, in the absence of con-
gressional expression to the contrary.    Congress has
laid a tax on cigarettes, prescribing the forms in
which they may be put up and the manner in which
they shall be stamped.    Rev. Stat. U. S., Sec.
3392.    This was done, however, for purposes of
revenue only, and, without more, was not a
recognition of them as legitimate articles of com-

merce. It was no expression on the subject of commerce one way or the other. Indeed, all internal revenue legislation is referable to a different provision of the fundamental law (Const. U. S., Art. I., Sec. 8, Cl. 1), and should be construed as relating to questions of revenue only, unless obviously intended to include some additional subject, which is not true in this instance. The fact that Congress has declared by general statute (Rev. Stat., Sec. 3243) that the payment of any tax imposed by the internal revenue laws for the carrying on of any trade or business shall not authorize the pursuit of that trade or business in any State forbidding the same, nor prohibit State taxation thereon, indicates unmistakably that Congress does not intend by the imposition of such special tax to reach, determine, or in any way affect questions appertaining to interstate or international commerce. The imposition of the tax is aside from all these questions. The statement herein that the taxation of cigarettes is not a recognition of them as proper commercial commodities, is sustained by the reasoning and decision in the case of *Plumley* v. *Pennsylvania*, 155 U. S., 461.

2. Was the sale shown to have been made in this case a sale of an original package, in the true commercial sense? We think not. It may be truly said to have been an original package for the purposes of taxation, because put up by the manufacturer, in the first instance, in one of the forms

prescribed by the internal revenue statute (Rev. Stat. U. S., Sec. 3392); yet it was not an original commercial package, because not sold and transported apart from other like articles, but in the same general receptacle with them. Speaking generally, we would say that an original package, as applied to interstate and international commerce, is a package, bundle, or aggregation of goods, put up, in whatever form, covering, or receptacle, for transportation and as a unit transported from one State or nation to another.

In *Guckheimer* v. *Sellers*, 81 Fed. Rep., 997, the Court said: "An original package, within the meaning of the law of interstate commerce, is the package delivered by the importer to the carrier at the initial point of shipment, in the exact condition in which shipped. In the case of liquors in bottles, if the bottles are shipped singly, each is an original package; but, if a number are fastened together and marked, or are packed in a box, barrel, crate, or other receptacle, such bundle, box, barrel, crate, or other receptacle constitutes the original package."

The Supreme Court of Iowa considered this question in *McGregor* v. *Cone*, 39 L. R. A., 484, and, upon the authority of numerous cited cases, ruled, as correctly stated in the headnote, as follows: "(1) An original package is that package which is delivered by the importer to the carrier at the initial point of shipment, in the exact condition in which it was shipped. (2) The determination of the

internal revenue department that a package is a proper and original package for purposes of taxation, does not show that it is an original package of commerce. (3) A pine box, in which are packed for commercial shipment packages of cigarettes, each of which contains ten cigarettes and is sealed with an internal revenue stamp, without any other packing or inclosure around or about them except the box itself, is the original package of commerce; and, when that is opened, the packages of cigarettes are subject to the police power of the State, as a part of the common mass of property therein.''

The material facts of the present case are, that the defendant purchased from the American Tobacco Co., at its factory in Durham, North Carolina, a lot of cigarettes, manufactured by that company at that factory, and there, by it, put into pasteboard boxes, in quantities of ten cigarettes to each box; that each of these boxes, known as packages, was separately stamped and labeled, as prescribed by the United States revenue statute; that, after defendant's purchase, the American Tobacco Co. piled upon the floor of its warehouse in Durham, North Carolina, the number of boxes or packages sold, and, having done so, notified the Southern Express Co. to come and get them; and said company, by its agent, took them from the floor and placed them in an open basket, already and previously in the possession of the Southern Express Co., and, in that basket, had them transported by express to the defendant's

town in Tennessee, and there an agent of the same express company took the basket to the defendant's place of business, and lifted from it, on to the counter of the defendant, the lot of detached boxes or packages of cigarettes, and thereupon took a receipt, and departed with the empty basket. Thereafter the defendant sold one of these boxes or packages, without breaking it,. and for that sale he stands convicted.

Under these facts, it is entirely manifest to our minds that the basket, with its contents, made one original package in the true commercial sense, each box or package of cigarettes being a constituent part thereof, and that the original commercial package was broken, and each box or package of cigarettes assumed a separate identity before the law, when the basket was relieved of its contents. This is true, though the basket was open all the while, and was filled and emptied by the agent of the express company. A box, crate, barrel, or basket, filled with goods for shipment, and actually transported from a citizen of one State to a citizen of another State, is no less a receptacle of the goods in a legal sense, and such receptacle is no less an original commercial package because open and not covered. The presence or absence of a covering to a receptacle so used is of no consequence in determining what is and what is not an original package.

In *South Dakota* v. *Chapman*, 10 L. R. A., 432, and also in *Rion* v. *Alabama*, 10 L. R. A., 430, it

17 P—37

appeared that whisky, in bottles separately wrapped, had been packed and shipped in uncovered boxes, furnished by the shippers, and the Court held, in each case, that the open boxes, and not the separate bottles, were the original commercial packages. The ownership of the basket used in the shipment involved in this case—whether in the shipper or the carrier—is not disclosed. If the defendant predicated anything of ownership in the carrier, the burden was upon him to show that ownership. To avail himself of the protection afforded by the Federal law in relation to the sale of original packages, he must prove every fact essential to show that his sale was of such a package. *Keith* v. *Alabama*, 10 L. R. A., 431. But we regard the question of such ownership as wholly immaterial, for, in taking the basket to the factory of the shipper and there putting the cigarettes in it, the express company's agent was acting for the seller, and the legal effect of his action was the same as if the basket had been procured and filled by the shipper alone. It is perfectly obvious, moreover, that this plan of shipment was resorted to as a mere device for the purpose of evading the State law against the sale of cigarettes. Prior to the passage of this law, as is well known, no such scheme was adopted in the transportation of such articles, and the carrier was not called upon to play so unusual a part in such a matter.

Our conclusion upon the whole case is, first, that

cigarettes are not legitimate articles of commerce, and, consequently, that their importation and sale are not within the scope of the commerce clause of the Federal Constitution, but are subject to State control and prohibition; and, secondly, that if they were legitimate articles of commerce the sale for which the defendant stands convicted was not of an original commercial package, and hence was not protected by that clause of the Federal Constitution.

Since cigarettes are not legitimate articles of commerce and as such within the domain of congressional regulation, the statute here called in question is valid as a whole—that part which prohibits the importation and sale of cigarettes manufactured out of the State, as well as that part prohibiting the sale of those manufactured in the State—and the defendant's conviction is sustainable under the statute generally, or under the former part, without reference to the question of original package. But if they were legitimate articles of commerce, and the former part of the statute, therefore, invalid, the latter part would remain valid, nevertheless (*State* v. *Scott*, 98 Tenn., 254), as an internal police regulation (*Kidd* v. *Pearson*, 128 U. S., 1; *Mugler* v. *Kansas*, 123 U. S., 623; *Plumley* v. *Massachusetts*, 155 U. S., 461); and the defendant's conviction would be sustainable thereunder, because his sale to Brown was not of an original commercial package, but only of a part thereof after it had been broken and its contents thereby made subject to the laws

Austin *v.* State.

of the State, like other local property of the same class. *Leisy* v. *Hardin*, 135 U. S., 100; *Schollenberger* v. *Pennsylvania*, 171 U. S., —.

We are aware that Judge Lurton, for whose opinion we have great respect, ruled otherwise in the case of *Soire* v. *State*, 82 Fed. Rep., 615, upon a record very similar to this one, yet we believe our conclusion entirely sound.

Affirm.