## IN RE LEW AGNEW.

FILED MAY 23, 1911. No. 16,957.

1. **Commerce: INTERSTATE AND INTRASTATE.** An original package as governed by interstate commerce law is that which is delivered by the importer to the carrier at the initial point of shipment, and retains its form and contents until received by the consignee in the same condition as when shipped. If, upon arriving at its

destination in a foreign state, the package is broken and its contents, in smaller units, is offered for sale, and enters into the retail commerce of the state, the distinctive quality of interstate commerce is lost, and the goods become at once subject to state laws.

2. ———: ———. The laws of congress governing and controlling interstate commerce can have effect upon property only during the time it retains its distinctive interstate quality, or character, of commerce. When such property is shipped to and enters the body of the property of the state, the original packages being broken and the contents offered and sold to retailers or consumers, its interstate quality is lost and it ceases to be subject to congressional control.

3. Food: PURE FOOD LAW: CONSTITUTIONALITY. A law of this state requiring packages containing articles of food to be branded with a statement of the net contents by weight when offered for sale in the retail trade imposes no obligation upon the manufacturer in a foreign state. The requirement operates alone upon the dealer who is selling the product at retail as a part of the body of the property of the state and exclusively under state control.

4. ———: ———: ———. The pure food law of this state (Comp. St., 1909, ch. 33) is confined to the regulation of intrastate commerce, and does not in any sense pretend to control interstate commerce. If, however, some of its provisions should be found to encroach upon the regulation of interstate commerce, that fact would not necessarily require the whole act to be declared void.

ORIGINAL application for writ of habeas corpus. *Writ denied.*

*John Lee Webster* and *Earl D. Babst,* for petitioner.

*Grant G. Martin, Attorney General, George W. Ayres* and *F. M. Tyrrell, contra.*

REESE, C. J.

This is an original application by Lew Agnew, whom we will designate as plaintiff, for a writ of habeas corpus. The petition is of unusual length and cannot be set out here in full. It must be sufficient to state that it is alleged therein that a complaint was filed in the office of the county judge of Pawnee county charging plaintiff with a violation of the

pure food laws of this state in the sale of a misbranded package of food known as "Uneeda Biscuit," the same being a wheat product, which had not been put up in package form by any retailer, the misbranding consisting of a failure to have placed upon said package a correct statement of the net weight or measure of the contents of the package; that a warrant was thereupon issued by the county judge and placed in the hands of the respondent, the sheriff of Pawnee county, who arrested plaintiff, and was holding him in custody, thus restraining him of his liberty, which, it is alleged, is in violation of law. The writ was issued, directed to the sheriff of said county, who has made his return setting up copies of the complaint and the warrant for the arrest of plaintiff thereunder, the arrest and custody as his justification.

The prosecution of plaintiff was instituted under the provisions of chapter 33, Comp. St. 1909, the sections of which, applicable to this case, are sections 8, 22, and 23 of the chapter. Sections 22 and 23 provide the penalty to be imposed for violations of the act, and section 8 defines misbranding, and declares that the failure to state upon a package of food, of the kind specified, the net weight or measure of the contents of the package, exclusive of the container, shall be misbranding.

It seems to be conceded that plaintiff has violated the provisions of the law, provided the law is constitutional and valid, but it is contended that the act of the legislature, and especially section 8 thereof, is unconstitutional and void, as being in derogation of the law of congress, and violative of the constitution of the United States, and therefore the detention of plaintiff is without warrant or authority of law, and is, for that reason, illegal.

The questions involved were argued at considerable length at the bar of the court, and the cause has been submitted thereon and upon extended briefs by plaintiff and the attorney general. It will be impossible for us to consider all the propositions presented by plaintiff without extending this opinion to an unreasonable length. Indeed,

there are many subjects discussed which we are unable to
see have any bearing upon the merits of the case.   The
cause is submitted upon an alleged agreed statement of
the facts supposed to be material to this inquiry, much of
which is, as we believe, wholly outside of the legal proposi-
tions involved.

As we view the case, it is deemed sufficient to say that
the article, the sale of which forms the basis of plaintiff's
arrest, was, and is, manufactured by a corporation known
as the National Biscuit Company, with its factories in
New York and Chicago, the product being put up in small
boxes or packages, the retail price of which is 5 cents a
package.   These packages are packed in larger receptacles
containing one dozen of the smaller ones, and those re-
ceptacles in turn are shipped from the factory in yet larger
bundles or containers to the points of distribution in the
various states.   The product handled by plaintiff in his re-
tail trade is shipped to him from a distributing agency at
St. Joseph, Missouri, encased in the larger bundle, which
he receives, opens, and from which he removes the smaller
bundles and places them upon his shelves, but from which
he removes the small 5-cent packages, and these he offers
for sale in his regular retail trade, singly or in numbers to
suit his customers.   This it is claimed is interstate com-
merce, and all jurisdiction or authority over it by the state
and state laws is prohibited by the clause of the constitu-
tion of the United States (article I, sec. 8) which provides:
"Congress shall have power   *   *   *   to regulate com-
merce with foreign nations, and among the several
states, and with Indian tribes."   It is claimed that
the manufacture, shipping and sale of the Uneeda
biscuits is interstate commerce, and that the char-
acteristic or distinctive quality of such commerce fol-
lows the product into the states and into the hands of the
retail dealer.   We apprehend that, under the decisions
of the federal supreme, subordinate and state courts
the shipment of the products of the factories in New York
and Chicago into the different states of the Union, other

than New York and Illinois, does constitute interstate commerce, and the regulation of that traffic rests with congress. But we are not willing to concede that, when such goods are shipped into this state in packages containing many small units of the product, and after they enter the state such packages are broken and their contents sold by retailers by the smallest unit to the consumer in the ordinary retail trade, they retain their quality of interstate commerce. If this were true, the only condition necessary to protect the retailer from a violation of state laws would be that the goods which he sells, no matter how remote from the manufacturer by mesne sales and transfers, shall have been manufactured in another state and shipped therefrom into this state. It never was the purpose of the provision of the constitution under consideration to thus protect violators of state laws by following the articles throughout the ramifications of the intrastate commerce and trade with the interstate quality. Whatever may have been the character of the commerce before the breaking of bulk and entry of the product into the general commerce of the state, that distinctive character or quality of interstate commerce is lost, and the product becomes subject to state regulation and control, upon the happening of that event, and neither the constitution nor any law of congress can have any authority or control over it to the exclusion of the power of the state. In short, it becomes a part of the domestic commerce of the state and subject to its laws. *May v. New Orleans,* 178 U. S. 496; *McGregor v. Cone,* 104 Ia. 465; *Smith v. State,* 54 Ark. 248; *Kimmell v. State,* 104 Tenn. 184; *Croy v. Obion County,* 104 Tenn. 525; *Austin v. State,* 101 Tenn. 563, affirmed, *Austin v. Tennessee,* 179 U. S. 343; *In re Harmon,* 43 Fed. 372; 6 Words and Phrases, p. 5059, and cases there cited; *Haley v. State,* 42 Neb. 556; *Parks Bros. & Co. v. Nez Perce County,* 13 Idaho, 298, annotated in 12 Am. & Eng. Ann. Cases, p. 1116.

It is contended that since congress has enacted a pure food law and has provided against misbranding of food, subject to interstate commerce regulation, the state is

thereby deprived of power to enact laws upon a similar subject. In the act of congress, approved June 30, 1906, 34 U. S. St. at Large, pt. 1, ch. 3915, p. 770, it is provided that, if packages are branded, the brand shall state the truth, but there seems to be no provision requiring interstate commerce packages or parcels to be branded at all. Many cases are cited from which it is contended that the law is settled that if congress takes any action upon the subject of the kind that fact excludes the states from enacting any law thereon. It is perhaps true that, where the state law in any degree impinges upon the subject of interstate commerce, such acts are void in so far as that commerce is concerned. But we are persuaded that that question cannot arise here, as the subject in hand does not involve any consideration of interstate commerce. The bundles or original packages having been broken after their delivery to the consignee within this state, it has entirely lost its distinctive interstate quality, and has become subject alone to the jurisdiction of the state, and an act or law of congress can follow it no further. If the state should see proper, as in this case, to enact laws for the purpose of protecting its citizens against fraud or deception in weights or quantities in the matter of the *sale* of such goods as are clearly within its exclusive jurisdiction, we are wholly unable to see by what right or authority congress can interfere. Indeed, as this conclusion appears so reasonable and sensible, we decline to pursue the subject further, except to say that we do not think the cases cited by plaintiff hold otherwise. The grant of the constitution to congress does not and cannot reach so far as to prohibit the states from the protection of their citizens against fraud in the sale of property, over which they alone have jurisdiction, to their own people.

The argument that because it would be quite inconvenient to brand the packages with the net weight of the contents the law should be held bad cannot be considered as an objection to the validity of the law itself, but might with greater propriety be directed to the legislature, should it

be thought of sufficient importance to require attention. In this connection it is urged that by the law of this state an attempt is made to control the manufacturer in New York and Chicago in its methods of manufacture and shipments. No such effort is made. We find nothing in the law requiring that the manufacturer should brand. The only purpose is to reach the seller within this state, and it is wholly immaterial by whom the brand is affixed. If the seller desires to handle the goods, he must see that the law is obeyed in his sale.

It is further contended, in effect, that the law of this state does not seek to confine its provisions to intrastate commerce, but that its provisions can as well include interstate commerce, and also, as some of its provisions may include forbidden legislation, the whole act must be held void, but particularly the eighth section. As to the former contention, we deem it sufficient to say that we find no ground or authority for holding that the act is intended to apply to anything but the commerce within the state and to commodities being sold within its well-known jurisdiction. As to the latter, we have not sought to ascertain if other provisions within the act may or may not be objectionable as beyond the power of the state, for the reason that such investigation would be wholly unnecessary. If some provision should be found which is violative of the constitution, that fact would not necessarily render the whole act void. In 36 Cyc. 983, it is said in the text: "The weight of authority is to the effect that, where a state statute is primarily intended to regulate domestic commerce, it will be sustained so far as it relates to such commerce, although it contains clauses invalid as attempting to regulate interstate commerce"—citing a number of authorities in the note. See, also, Standard Oil Co. v. State, 117 Tenn. 618; Austin v. State, 101 Tenn. 563; State v. Lancaster County, 6 Neb. 474; State v. Lancaster County, 17 Neb. 85; 3 Neb. Syn. Digest, p. 2964.

Other questions are presented in the brief of plaintiff, but none of which is believed to be vital to a proper de-

cision of this case, and this opinion will not be further extended.

It follows that plaintiff's petition must be dismissed and he be remanded to the custody of the sheriff of Pawnee county, which is done. Petition dismissed, and plaintiff remanded to custody.

WRIT DENIED.

FAWCETT and ROSE, JJ., not sitting.