[Crim. No. 1986.   In Bank.—June 21, 1916.]

In the Matter of the Application of W. M. FOLEY, for a Writ of Habeas Corpus.

SALE OF EGGS IMPORTED FROM FOREIGN COUNTRIES—CONSTITUTIONAL LAW—POLICE POWER—UNREASONABLE RESTRICTIONS.—The act of June 4, 1915 (Stats. 1915, p. 1163), regulating the sale of eggs shipped or imported into the state of California from any place outside of the United States, by requiring the seller to mark on the end of each egg the word "Imported" and to display in his place of business a conspicuous sign reading, "Imported Eggs Sold Here," and the importer to immediately make a report to the state board of health of the number of eggs received, the date when received, and the place where they were produced, is not a valid exercise of the police power, and is unconstitutional on account of the unreasonableness of its restrictions.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

John L. McNab, and E. H. Wakeman, for Petitioner.

C. M. Fickert, District Attorney, and Louis Ferrari, Assistant District Attorney, for Respondent.

MELVIN, J.—Petitioner is held in custody by the chief of police of the city and county of San Francisco, having been arrested upon three criminal charges based upon the violations of certain provisions of chapter 615 of the statutes of California. (Stats. 1915, p. 1163.) The charges are (1) that petitioner offered for sale and had in his possession certain eggs theretofore shipped from the Dominion of Canada into the United States without having stamped or printed upon one end of each egg, in black-faced letters not less than one-eighth of an inch in height, the word "Imported"; (2) that he received certain eggs which had been produced in the Dominion of Canada and shipped into the United States, without making a report to the state board of health as provided by statute; and (3) that he sold and offered for sale at his place of business eggs imported from Canada, without

displaying at said place a sign inscribed, "Imported Eggs Sold Here."

Petitioner contends that the statute which he is accused of violating is unconstitutional and void, in that it imposes unreasonable restrictions upon him; that by and through it the legislature attempted to violate that part of the constitution of the United States which commits to Congress the exclusive power to regulate foreign commerce; that it imposes a burden equivalent to a tax upon articles which are the subject of foreign commerce, based solely upon their foreign quality, and unjustly discriminates in favor of the citizens of one state.

Respondent seeks to defend the statute upon the ground that it is a proper police measure intended for the protection of the public from the sale of stale and unwholesome eggs. If that be its purpose, the statute was very faultily drawn, because it does not tend in any way to accomplish that end. It provided no method of inspection; no protection against the inferior quality of eggs placed on sale; and no requirement that the time of production, the method of shipment, or manner of attempted preservation of the eggs should be advertised. It merely enjoins upon the dealer in imported eggs the onerous and expensive duty of advertising elaborately the fact that they were not produced in the United States. Its only result would be not to protect the public from the sale of stale eggs, but to aid the domestic producer by appealing to the prejudices of people against eggs produced in foreign lands.

"Imported" eggs are not necessarily stale or unwholesome eggs, and the advertising of such eggs as coming from some place without the United States tends in no manner to protect the health of the Californian public. It is a matter of common knowledge that eggs may be shipped to any part of California from British Columbia more promptly than from the state of Maine or from Florida, and eggs from northern Mexico could be delivered sooner in San Diego than those produced in Petaluma. There is therefore no protection to the public from the sale of stale or unwholesome eggs afforded by this statute, and it is not defensible as a health measure.

This court, something more than a decade ago, declared unconstitutional an act requiring all fruit shipped or offered for shipment to be labeled with the name of the county and

locality where it was grown. It was said in plain terms that the legislature may not, under the guise of police regulations, enact laws which do not pertain to the protection of the public health or morals but which do impose onerous and unnecessary burdens upon business and property. (*Ex parte Hayden*, 147 Cal. 649, [109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184, 82 Pac. 315].) The statute before us is very burdensome. It requires the importer of eggs to open the original packages and to bear the expense of handling and marking each egg, and by this costly process the purchaser is not assured that the unmarked domestic egg is younger or sounder than the one so carefully labeled.

The statute before us is not at all analogous to the laws requiring packages of merchandise to contain brands correctly indicating net contents. Such laws have been sustained by such authorities as *In re Agnew*, 89 Neb. 306, [Ann. Cas. 1912C, 676, 35 L. R. A. (N. S.) 836, 131 N. W. 817], and others. None of these cases involved a distinction between goods produced in the United States and those manufactured elsewhere. The only important matter decided in the Agnew case was that the small retail packages shipped in larger containers from outside the state of Nebraska and placed upon the shelves of the merchant had ceased to be articles of interstate commerce and had passed into the commerce of the state, being subject, therefore, to local statutes. And even in so-called "pure food" statutes, the legislature may not impose oppressive and unnecessary burdens.

Nor do the so-called oleomargarine statutes furnish analogues for the act before us. In such cases as *Commonwealth v. Kelly*, 163 Mass. 169, [39 N. E. 776], and *People v. Arensberg*, 105 N. Y. 123, [59 Am. Rep. 483, 11 N. E. 277], cited by respondent, the courts were dealing with statutes which sought to prohibit the sale of substances colored to simulate in appearance butter made from the fats extracted from the milk of cows. The principle of those cases is that a purchaser of a standard article is entitled to protection from deception which may be practiced by the alteration of the appearance of one article to make it seem like something entirely different. In the opinion in the Arensberg case this fact is emphasized by reference to the holding in *People v. Marx*, 99 N. Y. 377, [52 Am. Rep. 34, 2 N. E. 29], that a statute was unconstitutional which sought to prohibit the manufacture, for

use as food, of any oleaginous substance not produced from pure unadulterated milk or cream.   The only purpose of such statutes as the ones upheld by the courts was to prevent the sale of oleomargarine so colored as to look like butter—in short, to guard the public from fraud.   (*Plumley* v. *Massachusetts,* 155 U. S. 461–468, [39 L. Ed. 223, 15 Sup. Ct. Rep. 154].)   There is no fundamental, organic difference between eggs produced in Canada and those laid this side of the national boundary line.   Therefore, the advertising requirements of the Californian statute do not protect the public from that sort of deception which foists upon the unwary purchaser an article essentially different from that which he thinks he is getting.

This statute, if enforced, would invoke against eggs shipped from all other countries the prejudice against those brought here from China and Japan, involving of necessity long sea voyages.   Proper statutes could doubtless be framed, based upon the age, manner of packing, and method of shipment of eggs brought into this state from afar, and the public might be protected from the danger of purchasing as fresh eggs those imported under adverse conditions.   But this is not such a statute.   Its sole criterion of alien origin is no proper finding of inferior quality, and therefore its burdensome exactions amount to an unjust attempt to exercise the police power.   This conclusion makes it unnecessary to discuss the other matters argued in the briefs, except perhaps we should call attention to the fact that as to the requirement of a report to the state board of health no special claim is made by the state, and it does not appear from anything brought to our attention that the state board of health has any function whatever to perform with regard to such report or has been given power of inspection depending upon it.

The provisions of the act under consideration are for the foregoing reasons declared void and the petitioner is discharged.

Shaw, J., Lorigan, J., Henshaw, J., and Angellotti, C. J., concurred.