[No. 16224. Department Two. January 10, 1921.]

## PARROTT & COMPANY, *Respondent,* v. E. F. BENSON et al., *Appellants.*[1]

CONSTITUTIONAL LAW (45)—POLICE POWER—NATURE AND SCOPE. The police power includes all regulations designed to promote public convenience, general welfare and property and great public needs, and it is not necessary for the court to find the existence of facts, if a state of facts can be reasonably presumed to exist which would justify the legislation.

SAME (48, 49)—POLICE POWER—REGULATION OF OCCUPATION—REASONABLENESS. Rem. Code, § 5466-1, requiring places using eggs imported from foreign countries to post conspicuous notices of such fact where customers could read them, is not unjust discrimination or an unreasonable restriction, but is within the police power.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered September 20. 1920, in favor of the plaintiff, in an action for an injunction, after a trial to the court on the merits. Reversed.

*The Attorney General* and *Frank P. Christensen, Assistant,* for appellants.

*Kerr, McCord & Ivey,* for respondent.

*Poe & Falknor, amici curiae.*

[1]Reported in 194 Pac. 986.

TOLMAN, J. — The respondent, as plaintiff below, brought this action to restrain appellant Benson, as commissioner of agriculture for this state, and appellant Adams, as chief of the division of the department of agriculture having direct charge of such matters, from enforcing the provisions of Laws of 1919, p. 290, ch. 120, and Laws of 1915, p. 274, ch. 94. The trial court reached the conclusion that a portion of subdivision (c) of § 1 of the act of 1915, was unconstitutional, and accordingly entered a decree perpetually restraining appellants and their successors in office from undertaking to enforce that portion of the act of 1915 held to be unconstitutional. This being an appeal by the defendants only, the 1919 act is not now in question, and we are called upon here to consider nothing beyond that portion of the act of 1915 held by the trial court to be unconstitutional. The act in question is entitled:

"An act relating to and regulating the sale of eggs, providing for the classification, labeling and marking thereof and providing penalties for violation thereof."

Section 1 of the act is here set out in full, and that portion thereof found to be objectionable by the trial court is italicized so that the particular features thought to be unconstitutional may be shown in their relation to the entire section:

"Section 1. For the purpose of this act, eggs shall be classified and branded as follows:

"(a) Cold storage eggs shall include all eggs which have been in cold storage for more than ninety days, and before being offered for sale shall be branded or stamped with the words 'storage.'

"(b) Preserved eggs shall include eggs in which the natural deterioration has been prevented or retarded by any means, process or treatment whatsoever, and before being offered for sale shall be branded or stamped with the word 'preserved.'

"(c) All eggs imported into the state of Washington from foreign countries shall be sold as such. The case or container in which they are shipped shall have the words 'foreign eggs' displayed thereon in letters two inches high. All retailers of said eggs shall sell them from the container in which he received them and shall inform each purchaser that said eggs are foreign eggs. *All restaurants, hotels, cafes, bakeries and confectioners using or serving foreign eggs must place a sign in letters not less than four (4) inches in size in some conspicuous place where the consumer entering their place of business can see it, to read 'we use foreign eggs.'*

"(d) Incubated eggs shall include all eggs which shall have been subjected to incubation whether natural or artificial for more than forty-eight hours and it shall be unlawful to expose or offer for sale or sell incubated eggs." (Rem. Code, § 5466-1.)

The objections to the act, urged below and here, are that it violates the provisions of the Federal constitution, which places the power exclusively in Congress to regulate commerce with foreign nations and among the several states, and that it is an unreasonable restriction, an invalid exercise of the police power, and an unjust discrimination in favor of the citizens of this state.

Two similar cases were relied on and followed by the trial court. *Ex parte Foley,* 172 Cal. 744, 158 Pac. 1034, Ann. Cas. 1918A 180, decided by the supreme court of California, and *State v. Jacobson,* 80 Ore. 648, 157 Pac. 1108, L. R. A. 1916E 1180, decided by the supreme court of Oregon, at about the same time. It appears that both the California and Oregon statutes there under consideration purport to deal only with imported eggs, while our statute by its terms covers all classes of eggs, but we place no special reliance upon that difference. The California case is reasoned upon the theory that the act does not protect the consumer

from ignorantly purchasing stale or unwholesome eggs, since eggs not imported and not required to be branded, and whose qualities the law does not require to be made known, may be still more stale and unwholesome; that imported eggs are not necessarily unwholesome or stale, and that therefore the act was not a valid exercise of the police power to prevent imposition and fraud upon the egg purchasing and egg consuming public. The Oregon case is reasoned almost wholly upon the theory that the act there involved was an attempt to regulate foreign commerce in violation of the Federal constitution, and it is assumed rather than reasoned, that it was not thereby intended to prevent the sale of impure or unwholesome food.

We find ourselves unable to agree with either view. We are already committed to the doctrine that the police power includes within its scope not only the public health, public morals, and public safety, but also all regulations designed to promote public convenience, the general welfare, and general prosperity, and all great public needs and

"In determining whether the provisions of the law bring it within the police power, it is not necessary for the court to find that facts exist which would justify such legislation. If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power." *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209; *Fisher Flouring Mills Co. v. Brown,* 109 Wash. 680, 187 Pac. 399.

In the cases cited the authorities upon which this doctrine is based are collated and discussed and need not now be again reviewed.

It is apparent that California follows a different rule, as in the *Foley* case it was said:

" 'Imported' eggs are not necessarily stale or unwholesome eggs, and the advertising of such eggs as coming from some place without the United States tends in no manner to protect the health of the Californian public;"

while under our doctrine we are bound to say that, unless it appears that imported eggs are in all respects equal to or better than domestic eggs and that no set of circumstances can exist which would justify the enactment of the law, then we must presume that the legislature had good and sufficient reasons for its enactment. While there is some evidence in the record tending to show that eggs imported from China are wholesome and equal to the domestic product, except in size, yet there is much tending to the contrary, purporting to show conditions under which eggs are produced, handled and shipped, which might well justify the consumer in exercising a choice between domestic and such foreign eggs, and all this act can do is to identify imported eggs, either as eggs or as ingredients in other merchandise, so as to permit of such choice. Surely if the foreign egg is entirely fresh and wholesome when placed upon our markets, it can stand upon its own merits and win its way to popular favor under its true designation. We cannot hold anything to be unjust discrimination, or unreasonable restriction which requires merchandise to be sold for just what it is, and prevents its sale as something other than it is. *Hathaway v. McDonald*, 27 Wash. 659, 68 Pac. 376, 91 Am. St. 889; *Hutchinson Ice Cream Co. v. Iowa*, 242 U. S. 153, 61 Law Ed. 217.

The Oregon court, in *State v. Jacobson, supra*, seems to have wholly lost sight of the fact that the portion of the act we are now considering can only operate after

the eggs have lost their status as articles of foreign or interstate commerce, and have become a part of the great mass of domestic property as completely as though produced within our borders. Surely, when an egg reaches a restaurant, hotel or bakery and is taken from the package, cooked or mixed with other ingredients, and served to the guest or purchaser as food, it requires no argument or authority to establish beyond cavil that it is no longer an article of foreign commerce over which Congress alone has control; otherwise no article once brought from without into the state, no matter how changed by any conceivable process, could ever become subject to state legislation; but authorities are as numerous as the question is simple. *In re Agnew,* 89 Neb. 306, 131 N. W. 817, Ann. Cas. 1912C 676, 35 L. R. A. (N. S.) 836; *Weigle v. Curtice Brothers Co.,* 248 U. S. 285, 63 Law Ed. 242; *Armour & Co. v. North Dakota,* 240 U. S. 510, 60 Law Ed. 771.

We conclude, therefore, that the portion of the act of 1915, now under consideration is not subject to the objections urged here, and since it is well settled that the courts will not declare a statute to be unconstitutional, unless its conflict with the constitution is plain beyond a reasonable doubt, we are constrained to hold that the learned trial court erred in the results reached. The judgment appealed from is reversed with directions to dismiss the action.

Holcomb, C. J., Mount, Mitchell, and Main, JJ., concur.