## CITY OF GALVESTON v. MEXICAN PETROLEUM CORPORATION.

(District Court, S. D. Texas, at Galveston. June 15, 1926.)

Commerce ☞77.

Oil brought from Mexico, not for general and indiscriminate sale, but to fill contracts already made, retains its character as import not subject to local taxation, though some small quantities were sold locally, when pumped into tanks from steamer from which it was shipped.

In Equity. Suit by the City of Galveston against the Mexican Petroleum Corporation. Decree for defendant.

M. H. Royston, former City Atty., Bryan F. Williams, City Atty., and P. A. Drouilhet, Asst. City Atty., all of Galveston, Tex., for plaintiff.

W. T. Armstrong and W. E. Cranford, both of Galveston, Tex., for defendant.

HUTCHESON, District Judge. In this case the right of the city of Galveston to levy a tax on oil brought into Galveston in tank steamers from Mexico, and from Galveston distributed under prior contract to the Missouri, Kansas & Texas Railway at Galveston and to interstate buyers out of Galveston, with a few sales spot, is conceded, unless (1) the tax upon the oil would be a tax on imports, prohibited by the federal Constitution; or (2) would constitute a burden on interstate commerce, so as to violate the interstate commerce clause; or (3) was levied under circumstances which showed a systematic and willful failure to tax other properties, so that the levy as taxed upon defendant's property constituted a discrimination, prohibited under the federal Constitution.

Finding, as I do, that the oil constituted an import, and was, under Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678, and following cases, a violation of section 10, art. 1, of the federal Constitution, it is not necessary for me to decide the very close and difficult question whether the taxes constituted a burden on interstate commerce, and the other interesting, but not so difficult, question of whether there was, under the circumstances, a discrimination against defendant's goods.

The city of Galveston attacks the claim of import exemption on the ground (1) that the defendant was not the importer, but that the Huasteca Petroleum Company was in fact importer. I have carefully read the record, and think it plain that the defendant in this case was the real importer; nor does that conclusion depend upon the question of the identity of the two corporations through common ownership and control. The facts, I think, show that the importation was that of the defendant, which had made all the arrangements to distribute the oil after it was imported.

[1] The plaintiff contends, too, that, conceding that the defendant was the importer, the goods were not in the original package in which imported, and therefore had become part of the general mass of property in the state. It is a matter of hornbook knowledge that the original package statement of Justice Marshall was an illustration, rather than a formula, and that its application is evidentiary, and not substantive, and I cannot give my assent to the view, expressed in the opinion of the Supreme Court of Maine in Mexican Petroleum Co. v. Portland, 121 Me. 128, 115 A. 900, 26 A. L. R. 965, that the tanker which brought the oil from Mexico is the original package in the sense of the constitutional construction, whether it is physically so or not. I am therefore of the opinion that the oil, when pumped into the tanks, still retained its state as an import, and would only lose it when, and if, it was maintained in tanks for the purpose of general and indiscriminate sale.

[2] After all, it is the facts in the case which make the law, and not the law which makes the facts, and the facts here show direct importation, with the provision for sale already made, and the pumping in the tanks a mere step in effecting that purpose. It would be a strained construction to hold that this oil, collected as it was, and distributed as it was, was not an import, within the meaning of the Constitution, and I am content to hold that it was.

[3] Some stress has been laid upon the fact that a few thousand out of the many million barrels of oil pumped in was sold for local use. The law, like other things, goes on common sense, and if these small spot sales, mainly matters of accommodation as they were, were to be given the effect of changing the character of this oil, it would be a case of the law being made de minimis, and not according to reason.

Let a decree be presented for the defendant.