[Civ. No. 10726. First Appellate District, Division Two.—February 2, 1938.]

PHILIPPINE REFINING CORPORATION OF NEW YORK (a Corporation), Appellant, v. COUNTY OF CONTRA COSTA, Respondent. [Two Cases.]

PHILIPPINE REFINING CORPORATION OF NEW YORK (a Corporation), Appellant, v. CITY OF RICHMOND, Respondent.

Wm. M. Maxfield for Appellant.

Francis P. Healey, District Attorney, and T. M. Carlson for Respondents.

SPENCE, J.—Three separate actions were brought to recover taxes paid under protest. Said actions were consolidated pursuant to stipulation. The trial court sustained demurrers to the complaints without leave to amend and

from the judgment thereafter entered in favor of defendants, plaintiff appeals.

This appeal involves the question of whether certain cocoanut oil, which was temporarily stored in tanks at Point San Pablo, was subject to local taxation under the circumstances alleged in said complaints. The three complaints were substantially similar in all of their essential allegations and therefore we need only discuss the allegations found in the complaint in action numbered 19345.

It is alleged therein that plaintiff conducts an importing business from its offices in New York City consisting of the importing of cocoanut oil from the Philippine Islands and the selling of the same to various customers within the United States in performance of contracts previously entered into with said customers; that the cocoanut oil so imported is in most instances sold to manufacturers who do not have large storage facilities and who therefore contract for said oil to be delivered in lots of one or more tank cars over a period of months; that cocoanut oil cannot be economically imported in such small quantities and can only be economically imported in steamer tank lots of from 500 to 1,000 tons each; that by reason thereof, it is necessary for plaintiff to have storage and transshipment facilities at the point of transfer from ship to rail in order to permit it to complete shipments of said oil at the times required in the purchasers' contracts; that for said purposes plaintiff owns and operates a receiving plant at Point San Pablo.

It is further alleged therein that plaintiff conducts said importing business by aggregating orders sufficient to fill one or more tanks available in steamers and when sufficient orders have been aggregated plaintiff makes importations of oil and said oil is discharged from the steamers at its said plant at Point San Pablo; that on the first Monday in March, 1933, by reason of the manner of conducting said import business, plaintiff had on hand at its plant a quantity of oil imported on four steamers. The facts concerning the amount, the time of arrival and time of departure from said plant of the oil in question were set forth in detail. It was further alleged that none of said oil was held by plaintiff for indiscriminate sale, but that it was imported for sale under said several contracts and thereafter delivered to the purchasers pursuant thereto, approximately 90 per cent of the oil continuing

its journey to purchasers outside the state of California and the remaining 10 per cent continuing its journey to purchasers within the state of California; that at all times in question title to said oil remained in plaintiff and that said oil remained in the original form in which it had been imported into the United States; that said oil was on the taxing date in question an import into the United States from a point beyond the territorial limits thereof and was in the course of an interstate and foreign movement and in transit and was not legally assessable or taxable by virtue of the provisions of the Constitution and laws of the United States.

The position of appellant is based upon two provisions of the Constitution of the United States. Article I, section 10 thereof, provides: "No state shall, without the consent of the Congress, lay any impost or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." Article I, section 8 thereof, provides: "The Congress shall have power . . . 3. To regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

These provisions and the authorities construing the same are relied upon by appellant to support its contention that the cocoanut oil was not subject to local taxation under the circumstances set forth in the complaints. In our opinion, appellant's contention must be sustained. (*Carson Petroleum Co.* v. *Vial,* 279 U. S. 95 [49 Sup. Ct. 292, 73 L. Ed. 626]; *Galveston* v. *Mexican Petroleum Corp.,* 15 Fed. (2d) 208; see, also, *Southern Pac. Co.* v. *Calexico,* 288 Fed. 634; *In re Taxes Pacific Guano & Fertilizer Co.,* 32 Hawaii, 431.)

Numerous authorities are discussed by counsel in their briefs but we believe that the foregoing authorities are controlling here. In this connection it may be stated that while the constitutional provisions above mentioned are separate and distinct, they are closely related and are discussed together in their application to the facts in many of the cases. The decisions are rested upon one or the other or both of said provisions.

The case of *Carson Petroleum Co.* v. *Vial, supra,* is closely in point although the oil there was being exported. The company took orders from foreign buyers and then purchased oil in Kansas, Oklahoma and Texas and caused it to be

transported in railroad tank cars to St. Rose, Louisiana. The company stored the oil there in tanks while awaiting shipment by steamer to the foreign buyers. The oil in each tank car was not segregated or assigned to any particular cargo or shipment but was pumped into the large storage tanks and held until a ship arrived or until a sufficient quantity was accumulated to make up a cargo. There as here, the oil was not held in storage for indiscriminate sale; title to the oil remained in the oil company and it was shipped from the point of storage in the same form in which it had been received. The oil company there contended that this constituted ''a continuous interstate and foreign shipment'', not subject to local taxation and this contention was sustained. The court stated the rule, as expressed in numerous authorities, that ''The crucial question to be settled in determining whether personal property or merchandise moving in interstate commerce is subject to local taxation is that of its continuity of transit''. It then discussed several earlier authorities dealing with the question of what constitutes continuity of transit and concluded that ''There has been a liberal construction of what is continuity of the journey, in cases where the court finds from the circumstances that export trade has been actually intended and carried through''.

The facts in *City of Galveston* v. *Mexican Petroleum Corp., supra,* are strikingly similar to those before us. The company there imported oil from Mexico and held it in storage tanks at Galveston while awaiting distribution under contracts previously made. It was there decided that the oil so held was not subject to taxation by the city of Galveston. The decision was rested upon the import clause rather than the commerce clause of the Constitution. The court cited the leading case of *Brown* v. *Maryland,* 12 Wheat. (25 U. S.) 419 [6 L. Ed. 678], the opinion in which was written by Chief Justice Marshall and has been frequently quoted in the subsequent cases. In the last-mentioned opinion it is said at page 441, ''It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original

form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution."

Respondents cite and rely mainly upon the case of *General Oil Co.* v. *Crain,* 209 U. S. 211 [28 Sup. Ct. 475, 52 L. Ed. 754]. That case is clearly distinguishable. It appears there that the oil was brought from the north to a distribution plant in Memphis. It was there placed in storage tanks and indiscriminately sold and distributed from that point. After a time, in an attempt to escape a local tax, part of the oil was put in tank No. 1, marked "Oil already sold in Arkansas, Louisiana and Mississippi", while the oil which had not been sold was kept in the other tanks. This case is thoroughly discussed in *Carson Petroleum Corp.* v. *Vial, supra,* both of said cases having been decided under the commerce clause. The court there points out that, "The case has caused discussion and it must be admitted that it is a close one and might easily have been decided the other way. The result was probably affected by the impression created by the original situation and the somewhat artificial rearrangement of tanks in a large entrepot for redistribution of oil to avoid previous taxability." In view of the distinction pointed out by the court in the Carson case, it appears unnecessary to discuss further the General Oil Co. case.

Respondents also rely upon *Mexican Petroleum Corp.* v. *Portland,* 121 Me. 128 [115 Atl. 900, 26 A. L. R. 965]. That case is not only distinguishable upon its facts, but it was decided without reference to the commerce clause. Furthermore, the holding of that case, based upon the court's construction of the import clause, was expressly repudiated in *City of Galveston* v. *Mexican Petroleum Corp., supra.*

In the present case, it appears from the allegations of the complaint that shipment from the Philippine Islands through the plant at Point San Pablo to various purchasers was intended and carried through pursuant to contracts made prior to the time that the journey began; that it was neither practical nor according to business custom to make through shipments in segregated lots to each individual customer at the times and in the amounts called for by the contracts of the purchasers; that the storage tanks in appellant's plant at Point San Pablo were used solely for holding said oil in its original form during a halt in the journey to the pur-

chasers and that none of the oil so held was intended or used for indiscriminate sale. In other words, it appears from said allegations that the oil was held at Point San Pablo solely for a purpose incidental to the transportation to wit, the transfer from ship to rail and the forwarding in tank car lots in accordance with the requirements of the contracts previously made. Such allegations show a continuity of transit which was not present in the cases cited by respondents.

Under the authorities above cited, we are of the opinion that the allegations of the complaints were sufficient to show that the oil was not subject to local taxation while so held and that the demurrers to the complaint should have been overruled.

The judgment is reversed with directions to the trial court to overrule the demurrers.

Nourse, P. J., and Sturtevant, J., concurred.