**FLORIDA GREENHART CORP. v. TAX ASSESSOR, et al.**
No. 60-C-8506.

Circuit Court, Dade County.

July 26, 1962.

Worley, Gautier & Dawes, Miami, for plaintiff.

Darrey A. Davis, County Attorney, for defendants.

JOE EATON, Circuit Judge.

This cause came on to be heard on plaintiff's motion for summary final decree. The court heard argument of counsel for the parties and has considered the record in this cause, including affidavits filed on behalf of plaintiff.

It is the plaintiff's position that there is no genuine issue of material fact raised in this record to challenge its position that certain of its goods (in 1959 and 1960) were imports, and thereby are immune from taxation by the defendants by virtue of article I, section 10, of the constitution of the United States. It is the opinion of the court that the plaintiff should not prevail upon the motion.

The subject goods were imported. The principal issue of fact raised by the record here is whether or not the goods had been put to the use for which they were imported — or, stated otherwise, had the plaintiff so acted upon the imported materials as to have caused them to have lost their distinctive character as imports. Embraced within the principal issue is the question — "Did the goods remain in the form in which they were imported or were they mingled with the mass of local property?"

The foundation case in this area of the law is Brown v. Maryland, 6 L. Ed. 678. Mr. Justice Black (in his dissenting opinion in Hooven & Allison Co. v. Evatt, 65 Sup. Ct. 870, April 9, 1945) notes that Brown v. Maryland has been narrowly restricted, but he agrees that "it has been, and still is, the general rule of decision in this Court, as regards imports for sale from foreign countries."

Thomas Reed Powell, Story Professor of Law, Harvard Law School, the author of *"State Taxation on Imports — When does an import cease to be an import?"* 58 Harvard Law Review, 858, writes in that article that the view expressed in Brown v. Maryland was that immunity lasted until sale, or use, or breaking bulk. In the absence of sale or breaking bulk, immunity continues, he says, until use begins.

In Brown v. Maryland, Chief Justice Marshall, speaking for the Court, declared that goods do not cease to be imports upon arrival at their destination, but he recognized "that there must be a point of time when the prohibition [to tax] ceases and the power of the state to tax commences." In indicating the dividing line he said —

"It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution."

Therefore, attention to this area of the law inevitably leads one to the "original package doctrine." Footnote 1 of the "Separate Opinion" in Youngstown Sheet & Tube Co. v. Bowers, 3 L. Ed.2d 470, explains —

"Although the principles of Brown v. Maryland are often termed the 'original package doctrine,' Marshall was concerned with a 'package' only because the statute in that case taxed the selling of goods in their original packages. 12 Wheat at 436 and 443. Marshall himself is careful to use the phrase, 'form or package,' 12 Wheat at 442, and Mr. Chief Justice Taney, in his reformulation of Brown v. Maryland, used the characterization 'form and shape.' See p. 56, infra. 'It is a matter of hornbook knowledge that the original package statement of Justice Marshall was an illustration, rather than a formula, and that its application is evidentiary, and not substantive, . . . City of Galveston v. Mexican Petroleum Corp. 15 F.2d 208.' "

The language contained in that footnote was derived from the following language several times employed by Mr. Justice Cardozo — "The rule of 'original package' is not an ultimate principle, it is an illustration of a principle."

Whatever may be the significance of retaining in the "original package" goods that have been imported for sale, we are advised in the majority opinion of the Youngstown case, supra —

" . . . goods that have been so imported for use in manufacturing are not exempt from taxation, though not removed from the 'original package,' if, as found here, they have been 'put to the use for which they [were] imported.' Hooven & A. Co. v. Evatt, supra (324 U.S. at 657). Breaking the original package is only one of the ways by which packaged goods that have been imported for use in manufacturing may lose their dis-

tinctive character as imports. Another way is by putting them 'to the use for which they [were] imported.' Id. That the package has not been broken is, therefore, only one of the several factors to be considered in factually determining whether the goods are being 'used for the purpose for which they [were] imported.'"

Mr. Justice Frankfurter, in his "Separate Opinion" which recorded his dissent on the main issue in Youngstown, reasoned (footnote 12, p. 509) that Brown v. Maryland denied immunity to goods which had been brought in and thereafter actively used by the importer.

The majority opinion in Hinson v. Lott, 19 L. Ed. 387, interprets Brown v. Maryland as having established that "it is only while the goods so imported were held in the original unbroken condition in which they came into the State, and in the hands of the first importer, that they would be protected from state taxation. As soon as they passed out of his hands into use, or were offered for sale among the community at large, they would be liable to a tax which might render their use or sale impossible."

In Brown v. Maryland, counsel for the state of Maryland had endeavored to illustrate their proposition (that the constitutional prohibition to tax imports ceases the instant the goods enter the country) by "an array of consequences which they suppose must follow the denial of it" (that proposition). Referring to counsel's illustrations, the great author of the opinion of the Court in that case wrote —

"This indictment is against the importer, for selling a package of dry goods in the form in which it was imported, without a license. This state of things is changed if he sells them, or otherwise mixes them with the general property of the state, by breaking up his packages, and traveling with them as an itinerant peddler. In the first case, the tax intercepts the import, as an import, in its way to become incorporated with the general mass of property, and denies it the privilege of becoming so incorporated until it shall have contributed to the revenue of the state. It denies to the importer the right of using the privilege which he has purchased from the United States, until he shall have also purchased it from the state. In the last cases, the tax finds the article already incorporated with the mass of property by the act of the importer. He has used the privilege he had purchased, and has himself mixed them up with the common mass, and the law may treat them as it finds them."

It is left for the court to decide, by the taking of testimony in this case, whether or not the plaintiff has drawn the "dividing line" as outlined by Chief Justice Marshall in Brown v. Maryland.

Therefore, it is ordered, adjudged and decreed that plaintiff's motion for summary decree be and the same is hereby denied.

\* \* \*

The law on this question appears to me to be now reasonably discernible from an analysis of the United States Supreme Court's treatment of the subject. Any confusion that may exist stems from the decisions of the Second District Court of Appeal of the State of California. A close comparison of the three cases from that court hereinafter cited clears the confusion to some extent. By close comparison we are able to discover how that court applied the "original package" doctrine in factual circumstances where goods were literally packaged and its treatment of the doctrine where such literal packaging of the goods by the shipper or importer was "impracticable."

In Dant & Russell, Inc. v. Board of Supervisors of Los Angeles County, 128 P.2d 389 (1942), we are told — "The fact that a portion of shipments of goods is sold or offered for sale, leaving the remainder intact in their original packages does not make the balance subject to state taxation." (Counsel should note the citations following that statement on p. 391 of Dant.) The Dant case involved lumber shipped in individual pieces, stacked in piles, one piece upon another, each shipment having been filed separately and kept to itself. The question before the court in the Dant case seems to have been whether or not the goods had been mingled with the mass property of the state. Dant held that they had not been so mingled. It held, in effect, that each piece of lumber was the original package. However, the court abandoned that position five years later.

E. J. Stanton & Sons v. Los Angeles County, 177 P.2d 804 (1947), involved pieces of imported lumber. (The factual situation present in the Stanton case is set out in considerable detail in the opinion. Suffice it to say, the facts are not far removed from the facts in the Dant case.) The respondent relied on the Dant case. The California District Court of Appeal said, however, that the California Supreme Court had "blacked out" the court of appeal's opinion in the Dant case though the California Supreme Court's ruling was predicated upon another theory. The Second District Court was careful to point out that the application for hearing before the California Supreme Court in the Dant case was based upon the county's claim that each piece of lumber in the cargo was not an original package. Therefore, it reasoned, the Dant case was no longer of authoritative value. It was referred to as "our defunct decision."

The Stanton case held, in effect, that the *unit of transportation* is the original package. (The Dant decision was either "blacked out" or the Second District "backed off.")

The case of Simon v. County of Los Angeles, 296 P.2d 381, involved building materials and supplies, mostly nails, all such supplies apparently having been literally "packaged." (The factual situation regarding method of storage and sale is set out in detail in the body of the opinion.) Simon (and other taxpayers) argued that each such keg, roll, etc., was in its original package and not locally taxable. The county confidently argued that each shipment in the aggregate was the package, or its legal equivalent, relying upon the Stanton case. The trial court agreed with Simon and the Second District Court of Appeal affirmed. In its reconciliation (or attempted reconciliation) of the Stanton case with the holding in the Simon case, the court (in the Simon case) wrote that Stanton "undoubtedly represents the law applicable to a situation where packaging is inherently impossible or impracticable." But, it said, "the Stanton case does not control imports which actually are in packages." There was no mention of the "defunct decision" of the Dant case in Simon.