207 So.2d 778

**AMERICAN MANNEX CORPORATION**

**v.**

**Alwynn J. CRONVICH, Sheriff & Ex-officio Tax Collector, Parish of Jefferson, Abel P. Prejean, Sheriff and Ex-officio Tax Collector, Parish of Terrebonne, and Robert Bourg, City Clerk and Ex-officio Tax Collector, City of Houma.**

**No. 48804.**

**Feb. 19, 1968.**

**Rehearing Denied March 25, 1968.**

Deutsch, Kerrigan & Stiles, H. Paul Simon, John A. Stassi, II, New Orleans, for plaintiff-appellant.

James Gaudet, Gretna, Ted J. Borowski, City Atty., City of Houma, Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Thomas M. Brahney, III, Special Counsel for the Atty. Gen., Henry J. Roberts, Jr., Asst. Atty. Gen., for appellees.

McCALEB, Justice.

Proceeding under the authority of R.S. 47:1998 and 2000 plaintiff instituted this suit to enjoin the collection of 1966 personal property taxes on tubular steel oil-well casing and to have assessments levied by the defendant tax collectors cancelled, alleging that the property is exempt as goods imported from abroad and held by it in the form in which it was imported. It is contended in the petition that the assessment of the tax and the attempted collection thereof is illegal, being prohibited by Sub-Section 19(a) of Section 4 of Article X of the Louisiana Constitution and Section 10 of Article I of the Constitution of the United States.

After interposing an exception of non-joinder of necessary parties, which was ultimately overruled, the defendant tax collectors resisted the demand. They asserted, in substance, that the steel casings assessed are not exempt from taxation under the provisions of the State and Federal Constitutions as they were shipped under a bill of lading, constituting the "original package" which was thereafter broken by the sale of some of the casing forming part of the shipment and, therefore, the remainder had become part of the mass of property in this State and removed from the constitutional inhibition forbidding assessments of duties on imports. Alternatively, it was contended that plaintiff is a retail merchant, holding the casing as part of his stock in trade for sale at retail, and, hence, subject to taxation under specific provisions of R.S. 47:1951.1 and Sub-Section 19(a) (3) of Section 4 of Article X of the Louisiana Constitution.

After submission of the case below on depositions and exhibits filed in evidence, the trial judge sustained the position of defendants and denied the injunction. From this adverse decision, plaintiff appealed directly to this Court under Section 10(1) of Article VII of our Constitution.[1]

The facts of the case are undisputed. They are shown by the deposition of Mr. H. G. Schroeter, Vice-President and General Manager of plaintiff corporation, and various exhibits introduced in evidence. We narrate them as follows:

Plaintiff purchases oil-well casing from Mannesman Tube Corporation, Limited in Sault Sainte Marie, Ontario, Canada, in anticipation of sales to its customers. The casing is shipped under a bill of lading by common carrier to a public warehouse, where it is unloaded and stored. Each piece of steel casing or joint is marked "Mannesman Tube Company" by use of the stenciled mill identification "M" with a circle, "Made in Canada", and color markings at the coupling end, indicating the grade of the pipe. After storage in the warehouse, according to length and grade, a

---

1. This Court is vested with appellate jurisdiction since the constitutionality and legality of a tax is in contest.

warehouse receipt is furnished to plaintiff. The shipper or truckline keeps a Kardex card indicating where the pipe is located, the number of joints, and out of which order the pipe originates. The warehouse racks on which the pipe is stored have location numbers and the Kardex cards show the rack numbers where the exact pieces of pipe are located. These cards are kept at the yard.

When orders are given by plaintiff for the sale of this tubing (casing, pipe or joint), it is located by the Kardex card and removed from the rack. Mr. Shroeter testified that the pipe may be moved from one rack to another in the yard after it arrives but, if so, it is without the instruction of plaintiff.

Plaintiff is the general agent for Mannesman Tube Corporation with offices in New York and Houston, and a salesman in New Orleans. There is no principal location insofar as warehouses are concerned (although the principal place of location for the business is in Houston) and goods so imported are stored in public warehouses at different locations.

When asked to outline the process for receipt of an order and the placing of this order with the Ontario firm, Schroeter answered:

"Customarily we make a market survey in talking to the oil industry, what their requirements will be for the next quarter, and based on this speculation we place our orders with the mill for in-transit stock at the various locations like Houma, Harvey, or Texas. Besides this we accept direct orders for direct mill shipments to the customer which will not go through the warehouse but will be shipped direct to the consumer." [2]

Orders are filled by notifying the trucker who has stored the casing, and joints are taken from the rack, but not necessarily from the particular rack of the last shipment. In other words, the joints are commingled with other joints in the warehouse at the time of delivery from Canada. Mr. Schroeter also testified that, on rare occasions, he has ordered casing from other companies in the United States and the territories and this merchandise is likewise stored in the warehouse.

Pursuant to law, plaintiff filed sworn lists of property assessable for taxation for the year 1966 in the Parishes of Jefferson, Terrebonne and the City of Houma. Included in these lists was the casing still stored in the warehouses, and on which plaintiff claimed exemption. Taxes were paid on the joints already sold to customers.

Plaintiff contends that, since the casing involved herein was purchased by it from Canada, shipped directly to a public warehouse and held therein in its original form

2. The invoices introduced in the instant proceedings do not cover any of the direct shipments above referred to.

from the dates received at the warehouse through December 31, 1965, it is exempt from local taxation under the State and Federal Constitutions. Plaintiff's position is that each separate casing is an original package and, therefore, sale of some does not affect the legal status of the remainder of the casings as separate imports shipped under one bill of lading.

The district judge, in rejecting this argument, held that the property taxes in question on joints of imported casing remaining in a bulk shipment from which other joints had previously been sold, are constitutional because " * * * the merchandise covered by the bill of lading constitutes the original package in which it was imported and once any portion thereof is disposed of, by incidental sales, the particular shipment loses its tax exempt status as foreign commerce."

Counsel for plaintiff proclaim that the reasoning of the judge has been expressly repudiated by this Court in considering the bulk shipment of crude oil in Mexican Petroleum Corp. of Louisiana v. Louisiana Tax Commission, 173 La. 604, 138 So. 117 (1931); that his ruling is in direct conflict with the Florida Supreme Court in Florida Greenheart Corporation v. Gautier, 172 So.2d 589 (1965), involving the import of timbers; and that it is at odds with the decisions of the Supreme Court of the United States in Brown v. Maryland, 12 Wheat. (25 U.S.) 419, 6 L.Ed. 678 (1827); The License Cases, 5 How. (46 U.S.) 504,

12 L.Ed. 256 (1847); Low v. Austin, 13 Wall. (80 U.S.) 29, 20 L.Ed. 517 (1871); Anglo-Chilean Nitrate Sales Corp. v. State of Alabama, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710 (1933); and Hooven & Allison Co. v. Evatt, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945).

Defendants, on the other hand, rely upon the California case of E. J. Stanton & Sons v. Los Angeles County, 78 Cal.App.2d 181, 177 P.2d 804 (1947), certiorari denied 332 U.S. 766, 68 S.Ct. 75, 92 L.Ed. 352; the rationale of May & Co. v. City of New Orleans, 178 U.S. 496, 20 S.Ct. 976, 44 L.Ed. 1165 (1900); and the comparatively recent case of Youngstown Sheet & Tube Co. v. Bowers and United States Plywood Corp v. City of Algoma, 358 U.S. 534, 79 S.Ct. 383, 3 L.Ed.2d 490 (1959).

The ruling of the trial judge that the tubing, under the facts presented, cannot be regarded as having retained its status as an import appears to be in accord with the criteria employed by the Supreme Court of the United States in determining the time when imports lose their character as such and become subject to local taxation. The immunity as an import has long ago been stated to last only until " * * * the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, * * * ". Brown v. Maryland, 12 Wheat. (25 U.S.) at page 441, 6 L.Ed. 678. The perplexing problem with which the judi-

ciary has invariably had to encounter is in deciding what acts are sufficient to justify the conclusion that the transition has occurred which enables the State to subject the goods to local taxation.

Article I, Section 10, Clause 2, of the United States Constitution prohibits the States from taxing imports or exports.[3]

In conformity with this prohibition our State Constitution was amended by Act 619 of 1960 so as to exempt from taxation, in Section 4 of Article X, the following:

"19(a) All raw materials, goods, commodities and articles imported into this state from outside of the continental United States:

(1) so long as such imports remain upon the public property of the port authority or docks of any common carrier where such imports first entered this state, or

(2) so long as any such imports (other than minerals and ores of the same kind as any mined or produced in this state and manufactured articles) are held in this state in the original form in bales, sacks, barrels, boxes, cartons, containers or other original packages, and raw materials held in bulk as all or a part of the new material inventory of manufacturers or processors, solely for manufacturing or processing, or

(3) so long as any such imports are held by an importer in any public or private storage in the original form in bales, sacks, barrels, boxes, cartons, containers or other original packages and agricultural products in bulk. This shall not apply to a retail merchant holding such imports as part of his stock in trade for sale at retail."

R.S. 47:1951.1 contains substantially identical provisions as the constitutional provisions quoted above.

 The provisions of our constitutional amendment clearly reveal, we think, an effort on the part of the Louisiana lawmakers to codify generally the jurisprudence of the Supreme Court of the United States in the form of conditions under which the constitutional immunity of imports from local taxation will be recognized and enforced. For example, Sub-Paragraph 3 of the above quoted Sub-Section 19 (a) of Section 4 of Article X, which is applicable to this case, conditions the exemption from state taxation so long as such imports " * * * are held by an importer in any public or private storage in the original form in bales, sacks, barrels, boxes, cartons, containers or other original packages and agricultural products in bulk. * * *" This declaration is simply a legislative state-

3. "No State shall, without the consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws * * *".

ment of the broken package doctrine long recognized by the Supreme Court of the United States, which was applied, among other cases, in May & Co. v. City of New Orleans, supra.

The question then is what criterion is to be employed in deciding whether lumber, steel casings or other articles which, because of their physical nature, are inexpedient, inconvenient or too costly to transport in packages—that is, whether the individual pieces of casing are to be considered separate packages, or whether the entire lot or shipment covered by the bill of lading is to be regarded as constituting the original package. If the former, the sale of some of the articles would not affect the status of the remainder as an import, whereas in the latter case, such sales would definitely be regarded as an act of the importer upon the imported material as to cause them to lose their distinctive character as imports by irrevocably committing them to the use for which they were destined after their importation journeys have definitely ended. See Youngstown Sheet & Tube Co. v. Bowers, supra. And see also the comprehensive discussion of Professor Melvin G. Dakin on the Export-Import Clause in his article appearing in 19 Louisiana Law Review 747 in which all pertinent federal decisions are considered and evaluated.

■ We have no hesitancy in concluding, under the facts of this case, that the original packages of casings imported by plaintiff comprised all casings covered by the bills of lading and that, when those casings or joints were stored in the warehouse and assorted with other tubing of like dimensions and quality, they were commingled and, in reality, formed part of the retail importer's inventory, thus becoming irrevocably committed to the purpose for which they were ultimately destined, i. e., sale and disposal by plaintiff, under the ruling in the Youngstown case. In any case, when a portion of the shipment was sold at retail to plaintiff's customers, all of the joints covered in the bill of lading, which we regard factually, as well as fictitiously, as the original package, lost their previous status as imports and became subject to local taxation. See May & Co. v. City of New Orleans, supra.

This is also the view of the California court in E. J. Stanton & Sons v. Los Angeles County, supra, which we consider to be a sound, practical and realistic appraisal of the problem presented. The contrary pronouncement in Florida Greenheart Corporation v. Gautier does not impress us.

We find the case of Mexican Petroleum Corp. of Louisiana v. Louisiana Tax Commission, supra, upon which plaintiff heavily relies, to be inapposite here. In that matter, the principal question presented for decision was whether crude oil imported in bulk by vessel and pumped from the ship into land tanks to make its import practicable for

commercial purposes constituted such a change in form of the shipment as to cause it to lose its character as an import. The Court held in the negative. But there, unlike here, the importer did not act upon the thing imported so as to incorporate or mix it up with the mass of property in the country. The only thing done was to transfer the oil from the tanks of the ship into land tanks so that it could ultimately be used in the refining process. There was no diversion of any part of the oil in that case for refining purposes, whereas, here, part of the shipment covered by the bills of lading had been sold. Indeed, we find it difficult to perceive how the cited case supports plaintiff's position in this matter.

It is true that one of the questions considered in the Mexican Petroleum case was whether the fact that the land tanks into which the oil was pumped already contained in each tank approximately 1,000 barrels of other oil of the same quality and kind con-

stituted such a commingling of oil so that the shipment lost its character as an import. But the Court, in answer to that argument, declared that it did not think that this justified the conclusion that the oil pumped from the ship lost its character as an import. On this phase of the case we entertain doubt as to the correctness of the Court's conclusion in view of the later decisions of the Supreme Court of the United States, particularly the 1959 decision in Youngstown Sheet & Tube Co. v. Bowers and United States Plywood Corp. v. City of Algoma.

█ We note that defendants in their brief in this Court request that they be granted specific calculated amounts as as attorney's fees under R.S. 47:2000. Since defendants did not appeal from the judgment below or answer plaintiff's appeal, we cannot consider the claim.

The judgment appealed from is affirmed.