Columbus Steel Supply Co., Appellant, *v.* Kosydar, Tax Commr., Appellee.

(No. 73-1034—Decided June 19, 1974.)

*Messrs. Porter, Stanley, Platt & Arthur, Mr. Edmund D. Doyle* and *Mr. Cletus J. Corbett,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

WILLIAM B. BROWN, J. The principal question presented is whether appellant has so acted upon the imported pipe as to cause the pipe to lose its distinctive character as an "import," within the meaning of that term as used in the Import Clause, Section 10 of Article I of the United

States Constitution,[1] and in paragraph one of the syllabus in *Republic Steel Corp.* v. *Porterfield* (1968), 14 Ohio St. 2d 101.[2]

The parties agree that any inquiry into state taxation of imported items must begin with a consideration of *Brown* v. *Maryland* (1827), 25 U. S. (12 Wheaton) 419. Two years after that decision, this court, in *Raguet* v. *Wade* (1829), 4 Ohio 107, 112, examined the principles enunciated therein, stating, as follows:

"* * * [the United States Supreme Court has] not determined the exact point where the operations of the grant to the importer shall cease, upon the articles imported, to protect them from state imposition.

"A rule, however, is suggested, and applied more than once in the decision of the court, which, with great deference, is deemed too vague and indefinite, even for practical purposes, and can not be adopted as a guide in judicial determinations. It is this, 'when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state.' [*Brown, supra,* 25 U. S. (12 Wheaton) at 441] This rule seems to have been suggested from that similar principle, that if one mingle his money with another's, so that the

---

[1]The Federal Import Clause reads as follows:

"No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the Treasury of the United States; and all such laws shall be subject to the revision and control of the Congress."

[2]Paragraph one of the syllabus in *Republic Steel Corp.* v. *Porterfield*, reads:

"The Congress of the United States has complete control over the levying of any duties on imports or exports, excepting those that may be absolutely necessary for the execution of state inspection laws, and any revenue derived from any state tax imposed on imports shall be for the use of the Treasury of the United States. (Section 10, Article I, Constitution of the United States.)"

proportions cannot be distinguished in the mass, the other shall have the whole. In some states, and respecting some articles, this rule might operate with justness and propriety; but by far the greater proportion of foreign commodities, and those from other states, are never mixed with the mass of property, so as to lose their identity. * * *''

Although the *Brown* rule may be ''vague and indefinite,'' the rule was applied in *Brown* to imported items which arrived in packages. The court concluded that so long as the imported item remains in the hands of the importer and in its shipping package, the item retains its status as an item immune from state taxation because it has not ''become incorporated and mixed up with the mass of property in the country.''

A later case, *May v. New Orleans* (1900), 178 U. S. 496, also involved the question of when may a state levy taxes on an imported item which arrives in a package. The court's conclusion, at page 510, is that an imported item loses its distinctive character as an import and is therefore amenable to state taxation when it is ''exposed or offered for sale.'' The imported items in *May* had arrived in packages, and in order for the items to be ''exposed,'' the package which enclosed the items had to be opened.

The principles enunciated in *May* are clearly applicable to the items of pipe imported by appellant in this case. The *May* court, at page 509, in language equally applicable to this case, stated: ''* * * The tax here in question was not in any sense a tax on imports nor a tax for the privilege of bringing the things imported into the state. It was not a tax on the plaintiffs' goods because they were imported from another country, but because at the time of the assessment they were in the market for sale in separate parcels and therefore subject to be taxed as like property, in the same condition, that had its origin in this country. * * *''

Appellant argues, however, that cases dealing with the original package doctrine are inapposite inasmuch as his pipe did not arrive in packages. We disagree.

Many courts have proposed that the term "original package" was applied in *Brown* v. *Maryland* merely because that case involved packaged goods. Other courts assert that the term was meant to be applied only figuratively. In *Austin* v. *State* (1898), 101 Tenn. 563, 575, 48 S. W. 305, affirmed, 179 U. S. 343, the court defined[3] the term as follows:

"* * * an original package, as applied to interstate and international commerce, is a package, bundle, or *aggregation of goods*, put up, in whatever form, covering, or receptacle, for transportation and as a unit transported from one state or nation to another." (Emphasis ours.)

The facts of this case are closely aligned with the factual setting of *E. J. Stanton & Sons* v. *Los Angeles* (1947), 78 Cal. App. 2d 181, 177 P. 2d 804, certiorari denied, 332 U. S. 766. The subject of taxation in that case was lumber not shipped in a package. At page 187, the court said:

"* * * the conclusion is irresistible that the unit of importation is the original package; that such unit only and not its constituent elements is within the exclusive federal jurisdiction. Although a cargo in bulk may arrive at the port of entry in irons, or wrapped and tied with hemp ropes, or encircled with a silken thread or, as a herd of steers, have no binder at all, yet the entire shipment without regard to its exterior wrapper is the original package. A cargo of planks, timbers or logs imported from foreign lands is surrounded by the invisible gossamer woven of law, custom and convention which protects the merchandise from the local tax assessor only so long as it retains the unbroken wrapper in which it entered the port. But when such cargo sheds its invisible cover, even though in the warehouse of the importer, and is so sorted and classified as to facilitate its sale, and portions thereof are sold until the pile is depleted and the remnants thereof are commingled with new shipments of the same type of

---

[3]For further definitions of the term, "original package," see annotation: What is an "original package" within interstate or international commerce, 26 A. L. R. 971.

timbers, also to be offered for sale, then a reasonable construction of Section 10 [the Import Clause] and the decisions which have interpreted its meaning compel the termination of immunity from local taxation of such broken lots and commingled remnants of imported lumber.''

We conclude, therefore, that the ''original package'' involved in this case was the commercial unit of importation. Applying that principle to the facts of this case, it is our opinion that each item of pipe which arrived in a shipment was an integral part of the aggregate which composed the commercial unit, and that when an item of pipe was separated from the commercial unit, or was sorted or segregated from other items comprising the commercial unit, the original package was broken or ''opened.''[4]

We recognize that the case law which embodies the original package doctrine has established a general focus of inquiry which, in the final analysis, requires an evidentiary determination that the actions of the importer upon the imported items caused a cessation of the tax immunity.

Appellant acted upon the pipe in this way: As the pipe was unloaded, appellant severed bands around some of the pipe in the commercial unit; the unit was then distributed in a sorting process where like pipes were gathered together; the pipe was placed in segregated stacks, presumably with like pipe which had arrived in previous imported shipments; the pipe then became inventory stock exhibited for sale; and pipe was removed piecemeal from the stacks for sale to buyers.

In light of those facts, we hold that appellant so acted upon the imported steel pipe as to cause the pipe to become incorporated and mixed up with the mass of property in this state. Therefore, the decision of the Board of Tax

---

[4]''* * * Where packaging is inherently impossible or impracticable, an imported, unpackaged item loses its immunity from state or local taxation when it is removed from an aggregate of other similar unpackaged items imported as a unit with it. * * *'' *Volkswagen Pacific* v. *Los Angeles* (1972), 7 Cal. 3d 48, 56, 496 P. 2d 1237.

Appeals upholding the tax was neither unreasonable nor unlawful, and we affirm.

*Decision affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze and P. Brown, JJ., concur.